IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE LUIS RAMOS-TORRES *et al.*, <br><br>**Plaintiff(s)** <br><br>v. <br><br>MUNICIPALITY OF CAGUAS, *et al.*, <br><br>**Defendants(s)** | **CIVIL NO.**  12-1706 (JAG) <br><br><br><br>CIVIL RIGHTS |

**OPINION AND ORDER**

GARCIA-GREGORY, J. D.

Before the Court are Defendants' Motion to Dismiss[1] (Docket No. 18). For the reasons set forth, the motion is **DENIED**.

**FACTUAL BACKGROUND**

The Court draws the following facts from Plaintiffs' complaint and takes them as true for purposes of resolving the motion to dismiss.

Plaintiff Jose Luis Ramos-Torres ("Ramos") is the owner of a store which operated in the Municipality of Caguas. In August 2011, Agents of the Caguas Municipal Police issued several fines to Ramos's store for violations to the Municipal Public Order

---

[1] Defendants' motion to dismiss was filed jointly by defendants: the Municipality of Caguas, the Honorable William Miranda-Torres, Wilfredo A. Puig-Perez, Commissioner William Marrero-Ayala, Agent Abimael Rodriguez, Agent Pablo Vargas and Municipal Police Lieutenant Pedro Flores.

Code. Ramos requested a meeting with the Commissioner of the Municipal Police Department, William Marrero-Ayala ("Commissioner Marrero"), to complain about the fines. During that meeting, Ramos and his attorney explained to the Commissioner that the fines were issued under inapplicable provisions of the public order code.[2] Commissioner Marrero later accepted that the fines had been issued in error. In spite of this, the municipal police continued issuing fines for the same violations. Therefore, Ramos met with the Vice-Mayor of the Municipality of Caguas, Wilfredo Puig ("Vice-Mayor Puig"); but the Vice-Mayor threatened Ramos, telling him that he would make sure the store closed down.

After this meeting, agents of the municipal police continued issuing fines. Also, a municipal police car was stationed in front of the store from 7:00pm to 2:00am on a daily basis. Ramos was later told by an aide of the mayor of the Municipality that Municipal Police Lieutenant, Pedro Flores ("Lieutenant Flores") had a pattern of persecution against him and was responsible for the presence of police officers at the store. Ramos eventually met with Mayor William Miranda-Torres ("Mayor Miranda Torres") during a Christmas party, where he informed him about the fines and Vice-Mayor Puig's threats. The

---

[2] Plaintiff explained that the articles under which the fines were issued did not apply to the store because the store was not a bar or pub, businesses for which they were meant.

mayor told Ramos that he would look into it and then meet again with Ramos. A second meeting never happened.

On the night of March 9, 2012, Ramos went to the Store and encountered several police cars parked outside and dozens of municipal and Puerto Rico Police Department ("PRPD") agents inside the Store. Officers from the Licenses Bureau of Puerto Rico's Treasury Department, firemen and Electric Power Authority employees, among others, were conducting an investigation in the store. Ramos's fanny pack was searched upon his arrival. He then asked for the person in charge of the investigation, who authorized him to call his attorney. While on the phone, PRPD Agent Pablo Vargas ("Agent Vargas") asked Ramos to move to the back of the store, to which he replied he would do in a moment. Agent Vargas twisted Ramos's arm and elbowed his face. Ramos was later arrested for obstruction of justice. None of the other agents intervened to either stop the arrest or the use of excessive force. The store closed down on March 17, 2012 due to financial issues allegedly caused by the persecution the Plaintiffs suffered.

### STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. To overcome a Rule 12(b)(6) motion, the

complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or "actual proof of those facts is improbable." Id. Finally, the Court assesses whether the facts taken as a whole "state a plausible, not a merely conceivable, case for relief." Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. See Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

**DISCUSSION**

I.   § 1983 Claim

A § 1983 claim for supervisory liability may not be based on *respondeat superior*. Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999); Ayala-Rodriguez v. Rullan, 511 F.3d 232, 236 (1st Cir. 2007) (citing Rizzo v. Goode, 423 U.S. 362, 375-377 (1977)). Government officials may be liable only on the basis of their own acts and omissions. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citing Iqbal, 129 S. Ct. at 1948; Aponte Matos v. Toledo Dávila, 135 F.3d 182, 192 (1st Cir. 1998)). Supervisory liability may arise in two ways: "either the supervisor may be a primary violator or direct participant in the rights-violating incident, or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Sanchez v. Pereira-Castillo, 590 F.3d at 49 (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)) (internal citations and quotation marks omitted). "In either case, the plaintiff in a Section 1983 action must show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit

Civil No. 12-1706 (JAG)                                                6

authorization, between the actor and the underlying violation." Id.

A supervisor may be liable by formulating a policy or engaging in a custom that leads to a civil rights violation committed by another. Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998)). "Thus, even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) actual or constructive knowledge of that risk, and (3) failure to take easily available measures to address the risk." Camilo-Robles, 151 F.3d at 7. But in addition to showing deliberate indifference, the plaintiff "must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission". Maldonado-Denis, 23 F.3d at 582.

After review, the Court finds that the complaint contains allegations that allow an inference that the municipal and state agents either participated directly in the unlawful actions or did nothing to prevent them. As to the supervisors, Plaintiffs allege that they had actual knowledge of the wrongful conduct

and situation that gave rise to this suit. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 93 (1st Cir. 1994) (holding that whether the supervising official "was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens" is an important factor when determining supervisor liability).

As to Vice-Mayor Puig, it is alleged that he directly threatened Plaintiff that the store would close down. And as to Mayor Miranda-Torres, he knew about the fines being issued to the store (even though they were not applicable to Plaintiff's business) and had actual knowledge of Vice-Mayor Puig's threats. The Court thus finds that the complaint establishes an affirmative link between Mayor Miranda-Torres and Vice-Mayor Puig's actions (or omissions) and Plaintiff's constitutional violations. Plaintiff's claims against Vice-Mayor Puig and Mayor Miranda-Torres survive.

Commissioner Marrero had actual and personal knowledge of the issuing of illegal fines by the agents following his meeting with Plaintiff. It is alleged, moreover, he failed to adequately supervise and train his subordinates, which were directly involved in the constitutional violations. Plaintiffs' allegations against Commissioner Marrero thus cross the plausibility threshold.

As to Lieutenant Flores, Plaintiffs allege that he was responsible for sending municipal agents to the store, where they issued fine after fine — this being the conduct that led to Plaintiff's constitutional violations. Lieutenant Flores is thus, according to the complaint, directly involved in the constitutional violations. Plaintiff's claims against Lieutenant Flores survive.

The complaint also alleges that some of the police officials present at the store failed to act and protect Plaintiff's rights. Agent Rodriguez moves for dismissal claiming that Plaintiffs have not established a causal connection between himself and the deprivation of Plaintiffs' constitutional rights, since it was Agent Vargas who incurred in the abuse of power. But Rodriguez's failure to prevent or stop Agent Vargas from using excessive force in his presence is an omission that may lead liability to attach. See Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) (holding that an officer may be liable for his failure to intervene when a fellow officer uses excessive force).

In sum, Plaintiff's complaint properly pleads plausible supervisory liability claims. The court notes that "[t]he role of these defendants can be made clearer in discovery and nothing precludes later efforts to end the case against them should

discovery not substantiate these inferences." Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 502 (1st Cir. 2012).

## II. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 526 (1st Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The Municipality asserts that the qualified immunity defense applies. Not so. Municipalities may not assert absolute or qualified immunity under § 1983. Laeatherman v. Tarrant County, 507 U.S. 163, 166 (1993).

As to the remaining defendants, and reading the complaint in a light most favorable to Plaintiffs, the Court finds that defendants did not act with "objective legal reasonableness." See Pearson v. Callahan, 555 U.S. 223, 243-44 (2009)(holding that the qualified immunity inquiry "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time"); Camilo-Robles v. Hoyos, 151 F.3d at 7. Therefore, the qualified immunity defense is, at this stage, denied as to all defendants.

**CONCLUSION**

In light of the above, Defendants' motion to dismiss is denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2014.

<u>S/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge