# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSE LUIS RAMOS-TORRES, *et al.*,

**Plaintiffs,**

v.                                                    CIVIL NO. 12-1706 (JAG)

MUNICIPALITY OF CAGUAS, *et al.*,

**Defendants.**

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before this Court is Defendants' Motion for Summary Judgment, Docket No. 85, and Jose Luis Ramos-Torres ("Ramos-Torres"), Katiushka Lopez-Fabbiani ("Lopez-Fabbiani"), and All Day Convenience Store, Corp., ("ADCS") (collectively, "Plaintiffs") Opposition to Summary Judgment.[1] Docket No. 91. After reviewing the filings and applicable law, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

## BACKGROUND[2]

On August 27, 2012, Plaintiffs filed the instant suit alleging violations of their Fourth and Fourteenth Amendment rights under 42 U.S.C. 1983 ("Section 1983"). Docket No. 1. Plaintiffs also

---

[1] The Court identifies the Municipality of Caguas (the "Municipality"), the Honorable William Miranda-Torres ("Mayor Miranda –Torres"), Vice-Mayor Wilfredo A. Puig-Perez ("Vice-Mayor Puig-Perez"), Municipal Police Commissioner William Marrero-Ayala ("Commissioner Marrero-Ayala"), agent Abimael Rodriguez ("Agent Rodriguez"), agent Pablo Vargas ("Agent Vargas"), Lieutenant Pedro Flores ("Lt. Flores"), and other unnamed parties collectively as "Defendants." Docket No. 7.

[2] For purposes of Defendants' Motion for Summary Judgment, all facts presented by Plaintiff and supported by affidavits or other evidence are presumed to be true. Facts are borrowed from Defendant's Statement of

seek pendent jurisdiction for violations of Article 1802, P.R. Laws ann. tit. 31, § 5141; and Article 1803, P.R. Laws Ann. tit. 31, § 5142, of the Puerto Rico Civil Code. *Id*. Below is a summary of the undisputed facts followed by the disputed ones.

### A. Undisputed Facts[3]

#### Fines Issued By Caguas Municipal Police Department

Plaintiff Ramos-Torres bought a convenience store in Caguas, Puerto Rico, in November of 2010, and managed it until May of 2012. Docket No. 86 at 2. After the sale, Ramos-Torres, who was at the time the president of ADCS, incorporated All Day Convenience Store, Corp, to operate the convenience store in Caguas. *Id*. at 4. Beginning in August 2011, Caguas Municipal Police Department ("CMPD"), began issuing fines to ADCS for allegedly violating the Municipal Public Order Code ("MPOC"). *Id*. at 7. These fines totaled over $3000. *Id*. Specifically, the fines issued were for violating: (1) Article 3.02, which prohibits the sale of alcoholic beverages for consumption in public spaces outside certain businesses; (2) Article 3.05, which prohibits the sale, by certain businesses, of alcoholic beverages after certain times; and (3) Article 10.07 which involves complying with municipal permit requirements. *Id*. at 17. Shortly thereafter, Ramos-Torres met with Commissioner Marrero-Ayala to discuss why his store was constantly getting fined. *Id*. at 20-21. In that meeting Ramos-Torres discussed the fines and informed Commissioner Marrero-Ayala that a municipal police officer had taken the patent from ADCS. *Id*. at 21. After the meeting,

---

Uncontested Facts, Docket No. 86, and Plaintiffs Response in Opposition to Defendants' Statement of Uncontested Material Facts, Docket No. 91-1.

[3] When referring to the Statement of Uncontested Facts, and the replies, the Court also incorporates by reference all the evidence to the record cited therein.

Civil No. 12-1706 (JAG)                                                                                            3

Commissioner Marrero-Ayala gave instructions to the CMPD to return the patent to Ramos-Torres. *Id.* at 23. However, fines continued to be issued to ADCS. *Id.* (exhibit W). All the fines issued during the relevant period were contested and subsequently dismissed by a municipal administrative judge. *Id.* at 18-19.

**March 9, 2012 Intervention**

On March 9, 2012, CMPD and Puerto Rico Police Department ("PRPD") officers as well as Department of Treasury agents, Puerto Rico Electric Power Authority employees, and firemen, entered and searched ADCS. *Id.* Thereafter, Ramos-Torres arrived at ADCS and started talking on the phone with his lawyer. Docket No. 97 at 98. When Agent Vargas saw Ramos-Torres on the phone he proceeded to pull him from behind the counter to the back. Docket No. 86 at 31. At all times Agent Rodriguez was inside the store, but behind the check-out counter when the alleged altercation between Agent Vargas and Ramos-Torres occurred. Docket No 85. While the altercation was happening, Lt. Flores, one of the officers present at the scene, was outside or just coming into the store. *Id.*

B.  **Contested Facts**

Plaintiffs allege that the Municipality of Caguas mistakenly issued the 2011 use permit to ADCS with an incorrect name. Docket No. 91-1 at 2. Ramos-Torres also claims that he met with Vice-Mayor Puig and with Mayor Miranda-Torres at a Christmas party in 2011. *Id.* at 2, 12, 20. Ramos-Torres also argues that in the altercation between Agent Vargas and Ramos-Torres-Agent Vargas elbowed him in the face, took his phone, and pushed him to the back. *Id.* at 22.

Defendants deny Plaintiffs recitation of the contested facts. Docket No. 97. Defendants argue that Mayor Miranda-Torres does not recall having a meeting with Ramos-Torres. *Id.* at 8-10, 55. Defendants also claim that Agent Vargas did not use excessive force against Ramos-Torres, or at least did not twist or bend his arms or elbowed him in the face. *Id.* at 67.

With those facts in mind, and disputes between them, the Court now turns to the Motion at hand.

## STANDARD OF REVIEW

A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party, and it is material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party . . . ." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (citing *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The nonmovant must demonstrate "through submissions of evidentiary quality[] that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). In evaluating a motion for summary judgment, the court "must view the entire record in the light most hospitable to the

party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). It is important to note that, throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

Defendants claim that Plaintiffs lack standing to pursue any action against them. Docket No. 85. Defendants further claim that there is not enough evidence in the record to support Fourth and Fourteenth Amendment violations under Section 1983. *Id*. Finally, Defendants argue that even if there were constitutional violations they are entitled to qualified immunity. *Id*. The Court addresses each argument in turn.

### I.   Standing[4]

The Court in an Opinion and Order dated September, 30, 2015, resolved the standing question as to who had standing to bring a claim in this case. Docket No. 74. The Court dismissed

---

[4] Defendants argue that the standing question should be resolved in their favor because Plaintiffs did not address Defendants' standing argument in their Opposition for Summary Judgment brief. Docket No. 96 at 3. Although the Plaintiffs did not brief this issue, because standing involves the federal court's subject matter jurisdiction, the Court may on its own assess whether a plaintiff lacks standing to sue. *See New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir. 1996) (Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002) (stating that when a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented).

Lopez-Fabbiani and Ramos-Torres's Section 1983 claims because as officers of the corporation they lacked standing to enforce ADCS's claims.[5] *Id.* Defendants now want to revive the issue arguing that ADCS does not have standing to sue because for the time frame of alleged unjust fines ADCS did not have a valid use permit.[6] Docket No. 85. The gist of Defendants' argument is that since a business needs a use permit to operate in Caguas, and the Municipality issued a use permit to "All Day Convenience Stores, *Inc.*," (an alleged third-party), and not "All Day Convenience Stores, Corp." (Plaintiff in this case), then ADCS cannot sue Defendants as it would lack standing to assert "All Day Convenience Stores, Inc.'s" rights. (emphasis ours). The Court disagrees.

Federal courts are constitutionally limited to only hear actual cases and controversies. *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 1.). A case and controversy exists when a party demonstrated "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

The standing analysis is bifurcated into two areas: constitutional requirements and prudential concerns. *Pagán v. Calderón*, 448 F.3d 16, 27 (1st Cir.2006) (citations omitted). On the constitutional side, a party must satisfy three requirements to have Article III standing on a claim: (1) actual or threatened injury; (2) the injury is fairly traceable to the defendant's conduct; and (3) it must be likely that the injury would be redress by a favorable decision on the merits. *Lujan v.*

---

[5] Although it is possible for a shareholder of a company to bring a derivative action on a corporation's behalf, Plaintiffs in their briefs did not assert their status as shareholders.

[6] A use permit allows the establishment owner to operate inside the Municipality of Caguas. Docket No. 86-5.

*Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Applying these principles, the Court finds that ADCS has standing. First, there is enough evidence on the record to support that ADCS suffered an injury and that that injury was caused by Defendants. *See* Docket No. 7. In its complaint, ADCS alleges that it suffered a Fourteenth Amendment violation because officers of the Municipality of Caguas selectively issued improper fines to ADCS.[7] *Id.* Thus, the first and second prongs are met. *Donahue v. City of Boston*, 304 F.3d 110, 115 (1st Cir. 2002) ([S]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents. (quotations omitted)). Second, ADCS alleges Fourteenth Amendment violations against Defendants and seeks monetary compensation for these violations. *Id.* If Plaintiffs obtain a favorable decision, the monetary award would, in theory, redress their injury. Thus, the third and final constitutional prong is met. The standing inquiry, however, does not end here.

Adding to these constitutional requirements, prudential concerns require "a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." *Pagan*, 448 F.3d at 27 (citations omitted). Defendants here are concerned that ADCS is asserting "All Day Convenience Store, Inc.'s" (an unknown third party

---

[7] Defendants do not assert that Plaintiffs lack standing on the Fourth Amendment excessive force claim. Docket No 85. Thus, the Court only address standing regarding the alleged Fourteenth Amendment violation based on the selective fines issued to ADCS.

that does not exist) rights and not its own, as ADCS's exact and full name is not in the 2011 use permit. Docket No. 85.

Contrary to Defendants' assertion, in this case prudential considerations do not prevent litigation of ADCS's claims. Although a business may in fact need a use permit to operate in Caguas, the use permit prerequisite to sue in federal court is an arbitrary requirement that Defendants want to adamantly impose on the Plaintiffs. This argument thus fails for various reasons. First, Defendants do no cite, and we could not find, any case law stating that not having a valid use permit would oust a plaintiff from federal court when pursuing a Section 1983 action against a municipality.

Second, as the record stands and by Defendants' own evidentiary findings, the Court notes that the permit in question was supposed to be issued to ADCS, Corp. Defendants state that two use permits were issued in this case, the 2011 use permit, Docket No. 86-6, and the 2012 use permit, Docket No. 86-5. The standing claim in this case revolves around the former. Defendants claim that ADCS did not have a valid use permit for 2011 as it had "All Day Convenience Store, Inc.," instead of "All Day Convenience Store Corp," displayed in the permit. Docket No. 85. However, after examining the 2011 permit request form, it is clear that Plaintiffs had correctly filled "All Day Convenience Store, Corp." in the "company name" line. Docket No. 86-6 at 2. It seems that it was the Municipality that mixed up the names, not Plaintiffs, and as matter of equity ADCS's case should not be dismissed for the Municipality's mistake. *Congregation Etz Chaim v. City of Los Angeles*, 371 F.3d 1122, 1125 (9th Cir. 2005) (holding that a municipality was equitably estopped from revoking a permit to construct based on the city's mistake in issuing the permit when the city had full knowledge of the plans to build and size of the building).

Thus, ADCS has standing to sue.[8]

## II.   Section 1983 Claims

It is well established that in order to have a valid Section 1983 claim a plaintiff must allege that (1) he was deprived of a federal right; and (2) that the person who deprived him of that right acted under color of state law. *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011). Under Section 1983, a defendant has acted under color of state law if he has abused his power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941).

For the sake of clarity the Court will first take on the alleged Fourth Amendment violation based on the March 9, 2012 intervention at ADCS. The Court will then discuss the Fourteenth Amendment violation based on the alleged illegal fines given to ADCS.

### A.   The Fourth Amendment

The Fourth Amendment protects arrestees and other "seized individuals" from unreasonable seizures. *See* U.S. Const. amend. IV. The Fourth Amendment springs into action when an officer exceeds the bounds of reasonable force in executing an arrest or investigatory stop. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). "The justification needed for these two types

---

[8] Notwithstanding the inconsistent name, the 2011 use permit had the address of the convenience store and a request number which would have given anyone the impression and notice that it was a valid use permit issued to ADCS and to be used by Plaintiffs. Docket No. 86-6 at 2. Additionally, in Defendants' own Statements of Uncontested Facts they admit that the use permit issued after the one in question (2012 use permit) cancelled the use permit issued in 2011 (the invalid permit in question). Docket No. 86 at 10. This supports the inference that the Municipality knew it had issued a permit for ADCS to operate in Caguas, but had just made a clerical mistake and inscribed the wrong name, when issuing the 2011 permit.

of seizures is qualitatively different: an arrest must be grounded on a showing of probable cause, whereas a[n] [investigatory stop] may be grounded on a lesser showing equivalent to reasonable suspicion." *Morelli v. Webster*, 552 F.3d 12, 19 (1st Cir. 2009) (internal citations omitted).

### 1.   Qualified Immunity

The qualified immunity inquiry has two requirements, taking the facts in the light most favorable to plaintiffs, the Court must first ask if "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011) (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)). If these two questions are answered in the affirmative then an inquiring court must then ask whether an objectively reasonable officer, performing discretionary functions, would have understood his or her conduct violated that clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982); *see also Crawford−El v. Britton*, 523 U.S. 574, 591 (1998).

### Agent Vargas

Agent Vargas argues that he is entitled to qualified immunity and cannot be held liable to Ramos-Torres for a Fourth Amendment violation. Docket No. 85 at 27. The Court disagrees.

As to the first prong, it is clear that Ramos-Torres established a valid Fourth Amendment claim. Courts analyze Fourth Amendment excessive force claims under an objective reasonable lens, not considering an officer's subjective "intent or motivation." *Id.* at 397; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Rather, courts determine whether a "defendant officer employed force that was unreasonable under the

circumstances." *Graham*, 490 U.S. at 397. This determination requires courts to balance contravening interests, weighing in three equally heavy factors (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396; *see also Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010).

In this case all the factors tip the scales in favor of Ramos-Torres. There was no cognizable crime taking place when the intervention at ADCS started, or when Ramos-Torres was talking on the phone. Docket No. 91-1 at 22. In fact, it is alleged that the highest ranking officer at the store gave Ramos-Torres permission to call his lawyer. *Id.* Moreover, Ramos-Torres posed little if no threat to the police as he was only talking on his cellular phone behind a counter. *Id.* Finally, there was no evidence that Ramos-Torres would have resisted or attempted to evade arrest by flight to excuse Agent Vargas' force employed, namely twisting his arm, taking his cell away from his person, elbowing him in the face and pushing him to the back of the store. *Id.* Thus, taking all the facts in the light most favorable to Ramos-Torres, a jury could infer that Agent Vargas intentionally used more force than objectively reasonable.[9] Accordingly, the Court concludes that for purposes of determining the first prong of qualified immunity, Agent Vargas used force that was unreasonable under the circumstances in violation of the Fourth Amendment.

The second prong of the qualified immunity test is also satisfied here. A court must first ask if there was clearly established right at the time of the events. A right is "clearly established"

---

[9] The Court notes that it is disputed whether Agent Vargas twisted Ramos-Torres's arm, elbowed him in the face and took away his cell phone.

if "the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado*, 568 F.3d at 269. The First Circuit has given clear guidance and extensively elaborated on the right to be free from excessive force. *Morelli*, 552 F.3d at 23. Given this well-established jurisprudence there is no doubt that this right was clearly established. The last question that the Court must answer is whether a reasonable officer in Agent Vargas' position "should have understood that his actions infringed that right." *Id.* This inquiry is a complicated one as "reasonable people sometimes make mistaken judgments, and a reasonable officer sometimes may use unreasonable force." *Id.* at 24. In this case, however, according to the facts presented by Ramos-Torres, Agent Vargas' use of force was not justified and cannot be claimed to be an excusable mistake. *Id.* ("qualified immunity gives an officer the benefit of a margin of error"). Not even taking the facts as stated by Defendants can we find that this was a protected mistake as there was no cause why Agent Vargas had to detain Ramos-Torres in the first place. Accordingly the Court finds that Ramos-Torres has made a sufficient showing to defeat Agent Vargas' qualified immunity defense.

## Agent Rodriguez

Defendants also argue that Agent Rodriguez cannot be held liable for failure to intervene in the alleged unconstitutional violation of Ramos-Torres because he is entitled to qualified immunity. Docket No. 85 at 29. Defendants do not delve into the qualified immunity analysis regarding the failure to intervene claim against Agent Rodriguez. *Id.* Instead, they only argue that that because the state of the law did not make Agent Vargas' actions a constitutional violation then Agent Rodriguez did not have any duty to intervene. *Id.* The Court disagrees.

Addressing the first prong, and taking as true Ramos-Torres account of facts, he established a cognizable failure to intervene violation under the Fourth Amendment. As stated above, the Fourth Amendment protects from unreasonable excessive force by a police officer. As a corollary to this rule, the First Circuit has consistently held that law enforcement officers, supervisory and non-supervisory, who have a realistic opportunity to prevent another officer from violating a person's constitutional rights may be liable for failing to do so. *See Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 n.3 (1st Cir. 1990). Courts have reasoned that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). Here, it is clear, and uncontested from the record that Agent Rodriguez was physically present and watching when the alleged constitutional violation against Ramos-Torres was taking place.  Docket No. 86 at 30-31. As explained above, a reasonable jury could conclude that Agent Vargas used excessive force against Ramos-Torres. As a result, Agent Rodriguez had a duty to stop Agent Vargas' excessive use of force either by ordering him to stop, or by trying to physically stop the altercation. By failing to intervene in this situation, a rational jury could find that Agent Rodriguez failed to intervene to protect Ramos-Torres's Fourth Amendment rights.

The second prong is satisfied as well. The First Circuit has held in at least two cases that an officer has an affirmative duty to stop another officer from violating a third party's constitutional rights. *See Gaudreault*, 923 F.2d at 207 n.3 (agreeing with other decisions holding that officers present at the scene who fail to take reasonable steps to protect the victim from another officer's excessive force can be held liable under Section 1983); *see also Davis v. Rennie*, 264

F.3d 86, 114 (1st Cir. 2001) (stating that "[a] police officer has a duty to intervene in cases in which a fellow officer uses excessive force because his office carries with it an affirmative duty to act"). Thus, Agent Rodriguez was on notice that he had to protect Ramos-Torres from any constitutional violation being administered by Agent Vargas. Likewise, a reasonable officer in Agent Rodriguez position would have known that his actions, or inaction in this case, would have infringed upon Ramos-Torres's rights. The fact that Agent Rodriguez was behind a counter does not excuse his action of standing idle and not ordering Agent Vargas to stop. Accordingly, the Court finds that Ramos-Torres has put forth enough evidence to defeat Agent Rodriguez's qualified immunity defense.

Having disposed of the qualified immunity defenses, the Court now turns to the merits of the Summary Judgment Motion.

### 2.  Excessive Force

The Court finds that summary judgment as to Ramos-Torres's Fourth Amendment claim against Agent Vargas must be DENIED. In this case, it is clear that there are several issues that preclude summary judgment. First, Ramos-Torres and Agent Vargas' versions of what occurred at the convenience store on March 9, 2012, differ in many ways. While both sides admit that there was some kind of contact between Agent Vargas and Ramos-Torres, according to Ramos-Torres side of the story Agent Vargas detained him and proceeded to twist his arm, take his phone, elbow him in the face and push him to the back of the store. Docket No. 91-1 at 22. Agent Vargas's denies Ramos-Torres's version of events, Docket No. 97 at 99, but admits that Ramos-Torres was pulled back from behind the counter towards the back by Agent Vargas, Docket No. 86. Thus, a reasonable jury presented with Ramos-Torres's account of the events could conclude that Agent

Vargas did in fact use excessive force. Accordingly, given the conflicting facts and evidence presented by Ramos-Torres, there is an genuine dispute of fact, and his Fourth Amendment claim against Agent Vargas must move forward to trial.[10] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (stating that "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." (quoting Fed. R. Civ. P. 56(c)).

    **3.**       **Failure to Intervene**

In the same vein, summary judgment must be DENIED on Ramos-Torres's Fourth Amendment claim against Agent Rodriguez, but GRANTED in favor of Lt. Flores. Plaintiffs allege that Lt. Flores and Agent Rodriguez failed to intervene while Agent Vargas was using excessive force to detain Ramos-Torres. Docket No. 7. According to Defendants, Lt. Flores was either outside or coming in when the alleged excessive force was being applied. Docket No. 86 at 30. Defendants also state that Agent Rodriguez was on the other side of the counter while the alleged constitutional violation was happening and would not have had a realistic opportunity to stop the alleged unconstitutional violation. *Id.* The Court agrees in part and disagrees in part.

**Lt. Flores**

---

[10] Ramos-Torres submitted an unsworn statement under penalty of perjury to support that Agent Vargas subjected him to excessive force. Docket No. 91-4. Generally, facts submitted by the party opposing the summary judgment motion if supported by affidavits or other evidentiary materials are regarded as true. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *see also* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 2016). Thus, the Court deems Ramos-Torres unsworn statement as true for purposes of disputing the facts on this motion. *Id.*

Based on the evidence, the Court finds that Lt. Flores is not liable for failing to intervene when Agent Vargas was using excessive force against Ramos-Torres. It is well settled that Lt. Flores has the affirmative duty to stop a constitutional violation even if it comes from a fellow officer. *Gaudreault*, 923 F.2d at 207 n.3. However, that liability cannot attach if he did not have a "realistic opportunity" to stop the alleged constitutional violation. *Id*. Defendants state, and Plaintiffs admit, that Lt. Flores was either outside or just coming in when the alleged constitutional violation happened. Docket No. 86 at 30 (Defendants' Statement of Uncontested Facts); *see also* Docket No. 91-1 at 10 (Plaintiffs' Statement of Uncontested Facts). Because Lt. Flores cannot be in two places at once, and at best he was entering the store when the alleged constitutional violation was happening, then as a matter of law he cannot be held liable for failing to intervene on Ramos-Torres behalf. *See Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997) (not finding liability for failure to intervene because the entire encounter happened behind the officer's accused of failing to intervene back); *see also Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994), *cert. denied*, 514 U.S. 1063 (1995) (finding that the officer accused of failing to intervene was not liable because he did not have a realistic opportunity to prevent the use of excessive force as he was just getting out of his squad car when the constitutional violation was taking place). Thus, Ramos-Torres's Fourth Amendment claim against Lt. Flores for failing to intervene is DISMISSED.

**Agent Rodriguez**

On the other hand, Agent Rodriguez was present when the alleged constitutional violation against Ramos-Torres was happening. Docket No. 86 at 30-31. Plaintiffs claim that Agent Rodriguez was the highest ranking officer from the Treasury Department at the scene. Docket No. 86 at 31. As the highest-ranking officer, he could have tried to physically stop, or at the very least

order Agent Vargas to stop the alleged constitutional violation against Ramos-Torres.[11] *See Durham v. Nunam*, 97 F.3d 862 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997) (finding that the nurse in a mental hospital was liable for failing to intervene when a mental patient was being attacked by security officers and she could have helped by directing the security officers to stop or by calling security from the main building). Defendants' argument that Agent Vargas' did not use excessive force and thus Agent Rodriguez did not fail to intervene is unavailing. First, Defendants' assertion that Agent Vargas did not use excessive force is conclusory as the question of whether Agent Vargas used excessive force against Ramos-Torres is a highly disputed one and as such, must go to the jury. *See Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 124 F.3d 47, 50 (1st Cir. 1997) (stating, with respect to summary judgment, "the nonmovant must identify properly substantiated facts sufficient to establish a trialworthy issue"). Second, the jury being the proper vehicle to determine if Agent Vargas used excessive force, it is also the proper one to determine if Agent Rodriguez could have stopped it. Thus, a rational jury could determine that it was within Agent Rodriguez's control to stop Agent Vargas' alleged constitutional violation.

As a result, Plaintiffs' Fourth Amendment claim for failing to intervene against Agent Rodriquez survives summary judgment and must be heard at trial.

---

[11] Agent Rodriguez and Agent Vargas are from different law enforcement agencies and it can be argued that one agency cannot control the other even if the officer from the other agency outranks the other officer. *See* Docket No. 7. However, other courts have held liability still attaches irrespective that the officer who failed to intervene belonged to a different government agency. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). We agree.

### B.  Fourteenth Amendment Claim

Plaintiffs allege that Defendants targeted ADCS and selectively and arbitrarily fined the convenience store in violation of the Equal Protection clause of the Fourteenth Amendment. Docket No. 7. Defendants argue that the Municipal supervisors were not deliberately indifferent to alleged constitutional violations, and that the Municipality did not have a policy or custom of infringing federal rights. Docket No. 18 at 16-18. The Court DISMISSES the equal protection claim for different reasons.

### 1.  Equal Protection and Due Process

The equal protection clause of the Fourteenth Amendment requires government actors to treat like persons alike, creating a selective treatment cause of action. *Rivera-Corraliza v. Morales*, 794 F.3d 208, 225 (1st Cir. 2015) (citing *Aponte-Ramos v. Álvarez–Rubio*, 783 F.3d 905, 908 (1st Cir. 2015)). In order to a survive summary judgment motion in a selective treatment claim, plaintiffs must show that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995) (quoting *Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989)).

Plaintiffs claim no membership to protected class. Instead, they argue that they were singled out by the CMPD and given arbitrary fines in bad faith with the intent to injure them. Docket No. 91 at 11. Thus, by alleging selective treatment of the laws to one entity a "class of one" is created. To prevail in a "class of one" equal protection claim, however, Plaintiffs must show that

they were similarly situated, but differently treated. *See Cordi–Allen v. Conlon*, 494 F.3d 245, 250 (1st Cir.2007). At a minimum plaintiffs must put forth "sufficient proof on the relevant aspects of the comparison to warrant a reasonable inference of substantial similarity." *Cordi–Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). In other words Plaintiffs have to show that the CMPD treated ADCS differently than other stores. In this case, the evidence submitted by both Plaintiffs and Defendants fails to meet the "similarly situated" test. Indeed, Plaintiffs in their brief, Docket No. 91, and in their amended complaint, Docket No. 7, fail to compare themselves with any other store in the Municipality of Caguas or at least in the territory of Puerto Rico. It would have been enough to ask a similar store in Caguas if they had been fined in the same manner as ADCS was in this case to satisfy the similarly situated prong. At any rate, this oversight defeats Plaintiffs equal protection claim and creates a domino effect dismissing the other claims as the other claims require a constitutional violation and this was the only constitutional violation they cognizably plead against the Municipality. Docket No. 91.

Accordingly, Plaintiffs' equal protection claim is DISMISSED.[12]

---

[12] Since the analysis required for equal protection and substantive due process are the same, we examine them together. *González–Droz v. González–Colón*, 660 F.3d 1, 9 (1st Cir. 2011); *Medeiros v. Vincent*, 431 F.3d 25, 32-33 (1st Cir. 2005). For both claims, when plaintiffs do not allege that a fundamental right is affected, they are required to show that the governmental infringement is not rationally related to a legitimate government purpose. *Id*. Here, the only fundamental right Plaintiffs allege is being infringed is premised under an equal protection claim, which fails as stated in the analysis above. Docket No. 91 at 13. Moreover, Plaintiffs do not allege any infringement on any other fundamental interest protected under the due process clause. Accordingly, Plaintiffs substantive due process claim must also fail.

### 2.  Supervisory Liability

The First Circuit has held that "[i]n an action brought under § 1983, supervisors are not automatically liable for the misconduct of those under their command." *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir.2000). However, a supervisor's liability "can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir. 2005) (citing *Camilo–Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)). Here, since no unconstitutional conduct is alleged in violation of the Fourteenth Amendment, then this claim fails as well. Accordingly, the Fourteenth Amendment supervisory liability claim under Section 1983 must be DISMISSED.

### 3.  Municipal Liability[13]

The Supreme Court in *Monell v. Dept. Social Services* held that municipalities could be held liable for violations of Section 1983, but not on the basis of respondeat superior. Rather, municipal liability is based upon enforcement of an "official policy or custom" that caused the deprivation of the plaintiff's federal right. *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 769 (1st Cir. 2010) (quoting *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir.2008)).

---

[13] The Court does not include all Municipal officials in this section since "it suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) Thus, bringing claims against the Municipality as well as all of its officials would be redundant. *See Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002) (noting that nothing "prevent[s] a plaintiff from foregoing the naming of an individual officer as a defendant and proceeding directly to trial against the municipality.").

The Supreme Court has held that under certain limited circumstances a municipality may be "liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees." *Canton v. Harris*, 489 U.S. 378, 380 (1989). Section 1983 liability attaches, however, only when the municipality's failure to train its officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. Finally, municipal liability requires the policy or custom is casually linked to the constitutional harm. *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989). Municipal liability based on failure to train requires showing that the failure to train caused a constitutional violation. Since Plaintiffs did not adequately plead and support a Fourteenth Amendment violation, then municipal liability cannot attach to Defendants. Accordingly, the failure to train claim must be DISMISSED.

### III. State Law Claims

Defendants did not argue why the pendent state law claims should be dismissed. Docket No. 85 at 23. Thus, the state law claims shall remain pending.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Fourth Amendment claim against Agent Vargas and Agent Rodriguez survive summary judgment. Plaintiffs' Fourth Amendment claim against Lt. Flores is DISMISSED *with prejudice*. Plaintiffs' Fourteenth Amendment claims are DISMISSED against all the Defendants *with prejudice*. Plaintiffs' state law claims also survive the Summary Judgment Motion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of July of 2016.

Civil No. 12-1706 (JAG)                                          22

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge